# Exhibit A

| JF | STATE OF MICHIGAN<br>3rd JUDICIAL CIRCUIT<br>COUNTY OF WAYNE | VERIFICATION OF<br>BUSINESS COURT ELIGIBILITY<br>AND NOTICE OF ASSIGNMENT | CASE NO.<br>- CB |
|---|---|---|---|

Court address: 2 Woodward Ave., Detroit, MI 48226

**Plaintiff(s)**
Amru Hashem

v

**Defendant(s)**
R3 Education Incorporated
DBA Medical University of
the Americas

I am the attorney for the [check one] ☑ plaintiff ☐ defendant and per *MCR 2.114(B)(2)* and *MCR 2.114(D)* declare to the best of my information, knowledge, and belief that this case meets the statutory requirements to be assigned to the business court, *MCR 2.112(O), MCL 600.8031 et seq.*, and request assignment to the Business Court for the following reasons:

17-008045-CB
FILED IN MY OFFICE
WAYNE COUNTY CLERK
5/30/2017 11:27:37 AM
CATHY M. GARRETT

*[Both Sections 1 and 2 must be completed to be accepted by the Court (check all that apply)]*

1. **Parties.** This is a qualifying business or commercial dispute as defined by *MCL 600.8031(1)(c)* because,

   ☐ all of the parties are business enterprises

   ☑ one or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships

   ☐ one of the parties is a non-profit organization, and the claims arise out of that party's organizational structure, governance, or finances

   ☐ It is an action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

   **AND**

2. **Actions.** This business or commercial action as defined by *MCL 600.8031(2)* involves,

   ☐ information technology, software, or website development, maintenance, or hosting

   ☐ the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers

   ☑ contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including but not limited to, alternative dispute resolution processes prescribed in the agreements

   ☐ commercial transaction, including commercial bank transactions

   ☐ business or commercial insurance policies

   ☐ commercial real property

   ☐ other type of business or commercial dispute (explain):

5/30/17
Date

Signature

Azzam Elder    P53361
Name (type or print)    Bar no.

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**AMRU HASHEM**

    Plaintiff,

vs

Hon.
Case No.     - CB

**R3 EDUCATION INCORPORATED**, a Massachusetts Corporation doing business as **MEDICAL UNIVERSITY OF THE AMERICAS**

    Defendants.
_____/

| | |
|---|---|
| **Mohammed Abdrabboh (P61989)** | **Azzam Elder (P53661)** |
| MAF LAW | Attorney for Plaintiff |
| Attorney for Plaintiff | 1360 Porter St, Suite 250 |
| 1620 Ford Avenue | Dearborn, MI 48124 |
| Wyandotte, MI 48192 | (313) 879-0355 |
| 734.283.7000 | azzam.elder@gmail.com |
| mabdrabboh@hotmail.com | |

_____/

## COMPLAINT

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

Now COMES Plaintiff, AMRU HASHEM by and through his attorneys, Mohammed Abdrabboh and Azzam Elder and for his Verified Complaint against R3 EDUCATION INCORPORATED states as follows:

## JURISDICTIONAL ALLEGATIONS

1) Plaintiff AMRU HASHEM (hereinafter "Hashem") is an individual who is currently but temporarily attending the Medical University of the Americas in the West Indies. Plaintiff is a resident of Canton, Michigan, County of Wayne State of Michigan.

2) Defendant R3 EDUCATION INCORPORATED (hereinafter "R3") is doing business as the Medical University of the Americas (hereinafter "MUA"), R3 is a Massachusetts corporation that operates three medical schools including MUA, doing business all over the United States, including hundreds of graduates from the State of Michigan, many of whom are from the County of Wayne.

3) Defendant R3's students have 'matched' residency programs every year since R3 acquired MUA in 2007. R3 since 2007 has matched countless students at Wayne State Medical School, Detroit Medical Center, Henry Ford Hospital, Michigan State School of medicine and has earned millions of dollars in tuition from Michigan residents **(Exhibit A)**.

4) Hashem's entered into a contract with R3 in Wayne County, MI to attend the MUA in May of 2016.

5) The amount in controversy is within the jurisdiction of this court because Plaintiff claims damages of $69,592.00.

## COMMON ALLEGATIONS

6) Plaintiff incorporates by reference paragraphs 1 through 5.

7) In May of 2016, Plaintiff and Defendant entered into an agreement in which Hashem agreed to attend the MUA to pursue a medical education.

8) R3 owns, controls and operates the MUA where Plaintiff is currently enrolled as a student. Upon completion of this current semester, Plaintiff will have earned 95 credits of the 160 necessary to graduate.

9) Among other promises and inducements made by R3 to Plaintiff, R3 posts online all of its rules and regulations in a document called the "Medical University of the America's Student Handbook" (hereinafter "Handbook") **(Exhibit B).**

10) The aforementioned Handbook lists several terms and conditions and imputes contractual obligations on both parties.

11) Relevant to this cause of action, the Handbook purports to govern expectations of students, staff and outlines procedures in the event certain instances or disputes occur.

12) For example, students are contractually obligated to take and pass certain courses before they can move ahead to the next semester.

13) One such course for Plaintiff in his third semester at MUA is a two credit science course named Epidemiology.

14) Relevant to this cause of action, the Handbook clearly outlines two policies on class absences and the related consequences and grievance procedures should an MUA student dispute any action taken by MUA relating to class absence(s) **(Exhibit B, pages 8 & 18).**

15) The Handbook is unequivocal insofar as it states that no students shall be absent for more than 20% of any total class sessions of any course or be subject to a "WF." A "WF" is when MUA forces a failure and withdrawal onto a students' record requiring the student make up the class the following semester because of excessive absences.

16) If required to make up a class, the student will only be able to take the class he or she didn't pass because the Handbook does not allow them to proceed with the next semester's course work.

17) Not passing or earning a "WF" even in a single course means a student will not graduate with their incoming MUA class, at least not with those students who did not have to make up a class during their tenure at MUA.

18) On or about May 23rd 2017, Plaintiff Hashem was forcibly removed from Epidemiology at MUA by Associate Dean Dr. Crum allegedly because he missed more than 20% of the course class sessions. The Epidemiology course is 4 weeks long, 4 days a week and two hours a day. In other words the course which concludes on June 1, 2017 is either '16 class sessions' or it is a total of '32 hours.' If calculated by 'hours' any student can be absent up to 6.4 hours, if calculated by class sessions any student can miss up to 3.2 class days.

19) Plaintiff did not miss but three total classes which is lower than the 20% allocated to Plaintiff pursuant to the Handbook and permissible.

20) Plaintiff was removed from the course by Dean Crum on May 23rd, 2017 and not permitted to take the Epidemiology mid-exam scheduled for that day.

21) Plaintiff on May 23, 24 and 25 was prevented by Dean Crum from seeking redress from the course instructor Dr. Sharma as is required pursuant to the Handbook.

22) Plaintiff was threatened, verbally accosted and told that despite clear evidence from MUA own attendance sheets, his "WF" for the course was a 'done deal' and that there was 'nothing he can do about it' and to 'stop' because Plaintiff 'is really annoying.'

23) Plaintiff Hashem attempted to contact Executive Dean Gordon Green only to receive an email from MUA's Registrar Amy Lecain to contact her.

24) Lecain advised Plaintiff he hadn't followed the appropriate procedure for a grievance. Plaintiff advised Lecain that since she was the Registrar at MUA, she could verify that he had missed only three classes and that two were for reasons of medical necessity.

25) Lecain responded that her computer "shows you have been withdrawn from the course." Lecain further opined that Dr. Green would not respond to Plaintiff's grievance.

26) Plaintiff advised that although the Handbook states his grievance should be addressed to course instructor Dr. Sharma, then to Dr. Crum, Dr. Crum in no uncertain terms warned Plaintiff not to communicate with him or course instructor Dr. Sharma.

27) Lecain opined that such conversation 'wasn't in writing' and she encouraged Plaintiff to send his grievance to her as well as Dr. Sharma and Dr. Crum.

28) On May 25th, 2017 Plaintiff did submit his grievance exactly as instructed to do so by Lecain, specifically to Dr. Sharma with a carbon copy to Dr. Crum.

29) Plaintiff to date has not received even an acknowledgement email from Amy Lecain, Dr. Sharma, Dr. Crum or Dr. Green that they received and/or are processing his grievance.

30) In his grievance, Plaintiff outlines the following facts: **(Exhibit C)**

   a.) He has not missed more than 20% of the course;

   b.) Other students in the same class missed substantial more than 20% of class sessions but remain in the Epidemiology course; and

   c.) that time was of the essence as Plaintiff was precluded from discussing the matter by Dr. Crum with him or course instructor Dr. Sharma as is outlined in the Handbook.

31) As of the date of this filing, Plaintiff remains forcibly removed from Epidemiology, has a "WF" on his transcript, Plaintiff must retake Epidemiology in the fall semester and forego every course already scheduled for the fall.

32) As of the date of this filing, several other students in the same course have missed substantially more Epidemiology classes yet remain in good standing and are slated to take the course final exam on June 1, 2017.

33) Plaintiff attaches **Exhibit D** which is clear evidence he is not in breach of MUA's attendance policy (three absences). **Exhibit D** is the official MUA attendance chart for every student in Epidemiology, you will note students who remain in good standing who have substantially more class absences than Plaintiff. The course has 16 total classes comprising 32 total hours, Plaintiff is permitted to miss a total of 6.4 hours. Plaintiff has missed a total of 6 hours, with 4 of these hours being excused by MUA as a valid medical excuse prior to dismissal. Even if MUA was to calculate individual course sessions as an "all or nothing" for purposes of attendance, Plaintiff is entitled to miss 3.2 days or 20%. Plaintiff missed a total of 3 days, with 2 of them being medically excused regardless.

## COUNT I
## BREACH OF CONTRACT

34) Plaintiff hereby incorporates by reference paragraphs one to thirty-three as if the same were set forth herein in full.

35) In good faith Plaintiff Hashem entered into an Agreement to attended MUA, whereby both parties obligations, terms and conditions and rights where outlined in the Handbook **(Exhibit B)**.

36) Plaintiff has fulfilled all obligations to date, including maintaining the level of academic and attendance required of any MUA student.

37) Plaintiff has also paid for tuition, fees, books, room and board as required, by this semesters end Plaintiff have paid approximately $69,592.00 to MUA.

38) Defendant has a contractual obligation to not impede Plaintiff Hashem right to an unimpeded education at the MUA.

39) When Plaintiff accepted the offer to enroll at MUA in May of 2016 he had a legal and contractual right to be treated fairly, with due process and was contractually permitted to miss up to 20% of any given course and for any reason whatsoever.

40) Plaintiff did not exceed the aforementioned 20% maximum, yet Defendant and its agents removed Plaintiff from the Epidemiology course without affording Plaintiff his contractually afforded rights of due process.

41) The breaches of contract above were and remain intentional.

42) The breaches of contract above were and remain material.

43) The breaches of above could have been but remain uncured.

44) Plaintiff has suffered and continues to suffer damages as a result of Defendants' breach.

WHEREFORE Plaintiff HASHEM respectfully requests that this honorable Court enter an award against Defendant R3 EDUCATION INCORPORATED HEALTH ONE, in the amount of $69,592.00 in damages, plus costs and attorney fees.

## COUNT II
## PERMANENT INJUNCTION

44.) Plaintiff hereby incorporates by reference paragraphs one through fourty-three as if the same were set forth herein in full.

45.) Defendant's own official records indicate that Plaintiff Hashem did not exceed the 20% absences in Epidemiology **(Exhibit D)** while others who remain in the course did.

46.) Defendant's conduct in dismissing Plaintiff without his contractually obligated and constitutional right to procedural and substantive due process has been outlined in this complaint and is supported by various exhibits including Plaintiff's affidavit **(Exhibit E).**

47.) R3's failure to reply to Plaintiff's grievance is knowingly and intentional and without justification.

48.) R3's failure to reply or address Plaintiff's grievance will cause Plaintiff unmitigated damage regardless of a later correction, Plaintiff because of the forced dismissal is compelled to miss courses next semester that require Epidemiology be passed prior to enrollment.

49.) R3's failure to correct Plaintiff's transcript by removing the "WF" from his academic record will prevent Plaintiff from any meaningful opportunity to pursue a future career in medicine in the United States.

50.) Plaintiff requests this Court award the following equitable relief to Plaintiff.

a.) Order the Registrar at MUA remove all negative connotations on Plaintiff academic record relating to Epidemiology, including but not limited to the "WF" connotation;

b.) Immediately reinstate Plaintiff back into the Epidemiology course and reflect the same on MUA's official attendance sheet accessible to MUA students.

c.) Make reasonable accommodations with Plaintiff to remediate both the mid-term and final exam prior to Plaintiff's next semester begins so he may complete Epidemiology.

d.) Order R3 and all of its employees, agents and staff not to retaliate against Plaintiff in any manner whatsoever.

Respectfully Submitted,

/s/*Mohammed Abdrabboh*
**Mohammed Abdrabboh (P61989)**
MAF Law
Attorney for Plaintiff
1620 Ford Avenue
Wyandotte, MI 48192
734.283.7000
mabdrabboh@hotmail.com

/s/*Azzam Elder*
**Azzam Elder (P53661)**
Attorney for Plaintiffs
1360 Porter St, Suite 250
Dearborn, MI 48124
(313) 879-0355
azzam.elder@gmail.com

Dated: May 30, 2017

"I have read the attached complaint and
I declare that the statements are true to the
best of my information, knowledge and belief."

/s/ Amru Hashem (original on file)
Amru Hashem